Opinion filed February 24, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 96—CF—1191 |
| LORENZO J. GONZALEZ, | ) ) | Honorable Timothy Q. Sheldon, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Burke concurred in the judgment and opinion.

**OPINION**

The defendant, Lorenzo Gonzalez, appeals from the December 28, 2008, order of the circuit court of Kane County denying his postconviction petition following an evidentiary hearing. On appeal, the defendant argues that he is entitled to a new trial based on newly discovered evidence of his actual innocence. Alternatively, the defendant argues that he is entitled to a new trial because trial counsel was ineffective in failing to call an alibi witness to testify at trial. We affirm.

BACKGROUND

On July 16, 1996, the defendant, along with a codefendant, James Lewis (Lewis), was indicted in connection with the murder of Ralph Stadler in Aurora, on January 15, 1996. The defendant and Lewis were tried separately. On December 5, 1997, following a jury trial, the defendant was found

guilty of first degree murder and was sentenced to 33 years' imprisonment. On October 7, 1999, this court affirmed the defendant's conviction and sentence on direct appeal. See *People v. Gonzalez*, No. 2—98—0572 (1999) (unpublished order under Supreme Court Rule 23) (*Gonzalez I*).

The facts necessary for an understanding of the disposition of this appeal are as follows. Stadler had been found by his son-in-law, Greg Zanis, around 1 p.m., at 610 Jungels Street in Aurora, a residence from which Stadler conducted business related to various rental properties that he owned. Stadler had been shot in the face. One of the rental properties owned by Stadler was located at 561 North Root Street in Aurora. Jennifer Lewis (Jennifer), who was Lewis's sister, and Steve Klingel, Jennifer's boyfriend, rented an apartment in this building. Lewis occasionally stayed at the apartment and the defendant visited him at the apartment.

At trial, Jennifer's neighbor, Irma Rodriguez, testified that sometime between 11 a.m. and 1 p.m. on January 15, 1996, she and her daughter, Sonia Garcia, saw Lewis and the defendant standing in the driveway talking to Greg Zanis. Esmerelda Avila testified that she lived six houses west of Stadler's rental office. Between 11:15 a.m. and 11:45 a.m. on January 15, 1996, she looked out her window and saw what she described as two "young kids" running across Jungels Street. Garcia and Avila testified as to the clothing worn by the individuals they observed. The clothing they described was very similar. William Jeffers, an investigator with the Aurora police department, testified that the victim's wallet was found within a block of the defendant's home.

Both Klingel and Jennifer testified at the defendant's trial. Klingel testified that around 11:30 a.m. on January 15, 1996, he was working, as a tow-truck driver, when he received a page from Jennifer. When he called her back, Jennifer told him that Lewis had called her and said that he and the defendant had just robbed Stadler and had shot him to death. Approximately 30 minutes after his

conversation with Jennifer, Klingel was towing a car when he saw the defendant's car drive by. Klingel motioned to the defendant. The defendant stopped his car and came over to Klingel's tow truck. Klingel asked the defendant, "what the hell you guys did?" The defendant responded that "we shot that mother f***er and got a few hundred bucks." Based on what Jennifer had told him, Klingel knew that the defendant was referring to Stadler. However, he did not go to the police.

Klingel testified that he finally went to the police on June 21, 1996. On the day he went to the police, he was on conditional discharge for misdemeanor theft and was also supposed to be in court on some pending felony charges. He was eligible for consecutive prison sentences totaling 14 years in connection with those felony charges, and a petition to revoke his conditional discharge was pending. However, in exchange for his testimony, the State's Attorney dismissed the felony charges and the petition to revoke his conditional discharge.

Jennifer testified that on January 15, 1996, Lewis and the defendant had been at her apartment around 9 or 10 a.m. and left in the defendant's car to get cigarettes. Jennifer further testified that, a few weeks after the murder, she spoke to the police at her apartment, but she did not reveal all that she knew. She next spoke to the police on June 21, 1996, after Lewis had been arrested. The parties then presented a stipulation concerning what Jennifer had told the police on June 21, 1996. According to the stipulation, Jennifer told the police that Lewis had called her around 11:30 a.m. on January 15, 1996, and said that he needed to talk to Klingel about something serious. When Jennifer asked what Lewis was talking about, he told her that she did not have a landlord anymore. When Jennifer asked what he meant, Lewis said that he had killed him. Jennifer then paged Klingel, and when he called her back, she told him what Lewis had said.

Investigator Marshall Gauer of the Aurora police department testified that he had interviewed the defendant at the Kane County jail on June 22, 1996. The defendant denied being at Klingel's apartment the morning of the murder, saying that he usually slept until noon. The defendant also denied knowing Stadler or being involved in Stadler's murder.

The Honorable John L. Petersen testified that he is a judge in the Sixteenth Judicial Circuit and, on June 23, 1996, had presided at the bond hearings for the defendant and Lewis. Although the bond hearings for the defendant and Lewis were held separately, the two made eye contact with one another during the transition between their hearings, and one said to the other, "You tricked on me," to which the other replied, "No, you tricked on me." Pam Monaco, an assistant State's Attorney who was also present at the bond hearing, testified that, as defendant was being led out of his bond hearing, Lewis was being brought into the room. The two made eye contact and defendant said to Lewis, "You tricked on me." Lewis replied, "No, you tricked on me and I'm going to get you."

The defendant did not testify on his own behalf and did not present any evidence. During its deliberations, the jury had multiple questions for the trial court and at one point all 12 jurors stated to the trial court that they did not feel further deliberations would lead to a verdict. However, the trial court ordered the jury to continue deliberating. After deliberating for 11 hours, the jury found the defendant guilty of first degree murder.

Following his unsuccessful direct appeal, the defendant filed a *pro se* postconviction petition on January 14, 2000. One of the two points raised in his petition was that he was entitled to a new trial because of newly discovered evidence of his actual innocence that could not have been discovered prior to trial through the exercise of due diligence. The petition alleged that this evidence was of such conclusive character that it would undoubtedly change the result on retrial. Specifically,

the defendant attached to his petition an affidavit from Lewis, dated February 17, 1999, which asserted the defendant's innocence. Lewis's affidavit detailed the events leading up to the murder of Stadler. Lewis stated that the defendant was not with him when he murdered Stadler. Additionally, Lewis explained that, prior to the preparation of the affidavit, he remained silent on the advice of counsel because he was in the midst of his own trial.

On March 1, 2000, the trial court appointed counsel to represent the defendant. On February 15, 2001, the defendant filed an amended postconviction petition. On April 24, 2001, the State filed a motion to dismiss the defendant's petition. On November 19, 2001, following argument, the trial court denied the State's motion to dismiss and denied the petition, stating that it recalled the credible testimony at trial and that the affidavit was contrary to that evidence. The defendant appealed.

On appeal, this court vacated the trial court's judgment and remanded for an evidentiary hearing. *People v. Gonzalez*, No. 2—01—1329, slip op. at 7 (2003) (unpublished order under Supreme Court Rule 23) (*Gonzalez II*). This court held that, although the trial court had considered the November 19, 2001, hearing to be an evidentiary hearing, it was not a proper evidentiary hearing. We reasoned that, since the trial court moved directly from the hearing on the State's motion to dismiss into a hearing on the defendant's petition, defense counsel was unprepared, and thus no witnesses testified and no other evidence was presented. Accordingly, we vacated the decision of the trial court and remanded for an evidentiary hearing on the defendant's postconviction petition. *Id*.

On June 23, 2006, upon remand, the trial court granted the defendant's request to file an amended postconviction petition. Accordingly, on May 17, 2007, the defendant filed a second amended postconviction petition. In that petition, in addition to arguing that he was entitled to a new trial based on newly discovered evidence of actual innocence, the defendant raised a new ground of

relief, namely, that trial counsel was ineffective in failing to call an alibi witness, Suzanne Plante, to testify. On June 13, 2007, the State filed a motion to strike, arguing that the inclusion of a new ground for relief at the third stage of postconviction proceedings was untimely. On July 17, 2007, the defendant filed a response, acknowledging that the untimeliness argument was well founded but arguing that the trial court should consider the alibi testimony of Plante on the bases of fundamental fairness and judicial economy.

On December 13, 2007, a hearing was held on the State's motion to strike. Defense counsel argued that she was appointed to represent the defendant for the first time on remand and had subsequently discovered the issue of Plante's alibi testimony. Counsel argued that the ineffectiveness of the failure to call Plante supported the defendant's claim of actual innocence. However, because Plante could have been called, counsel could not tie her testimony into the existing claim of newly discovered evidence. Following argument, the trial court granted the defendant leave to file a "successive" postconviction petition including the new claim of ineffective assistance.

At a January 4, 2008, status hearing, the State explained the posture of the case. Specifically, the State explained that the defendant had raised a new issue in his second amended postconviction petition, when the first amended petition had already advanced to the third stage. The State acknowledged that the parties had agreed that the defendant should be able to raise the new issue, but it argued that it should have an opportunity to address the issue at the second stage. The trial court had previously agreed with the parties' suggestion to allow the defendant to file a successive postconviction petition to raise the new issue. The State indicated that it had erred in suggesting that the defendant's amended petition be labeled a "successive" petition. Rather, the State suggested that the defendant should request leave to file an "additional issue" in his first amended petition and that

the State be allowed to address the new issue at the second stage—to let the new issue catch up to the third stage, if warranted. Thereafter, the trial court entered an order granting the defendant leave to withdraw his second amended petition and to file an amended first amended petition, including the claim of ineffective assistance. The trial court also granted the State leave to respond, by motion, to this new claim.

On January 16, 2008, in conformance with the January 4, 2008, order, the defendant filed (1) a motion for leave to raise an additional issue in his first amended postconviction petition and (2) an amended first amended postconviction petition raising the ineffective assistance claim. Attached to the latter were affidavits from Lewis, Plante, and Beth Peccarelli, an assistant Kane County public defender.

On February 13, 2008, the State filed a motion to dismiss the ineffective assistance claim. On May 1, 2008, following a hearing, the parties, by agreement, continued the case for a hearing on the State's motion to dismiss, to be combined with the third-stage evidentiary hearing regarding the newly discovered evidence. On July 24, 2008, the State filed its answer to the amended first amended postconviction petition.

On November 12, 2008, at the combined hearing, Lewis testified that on January 15, 1996, at approximately 11:30 a.m., he went to Stadler's business office, which was a home on Jungels Street in Aurora. He had known Stadler for a few months and knew that Stadler collected rent payments at the Jungels address for various rental properties. When Stadler answered the door, Lewis stepped inside, pulled out a gun, and asked for money. When Stadler moved toward Lewis, Lewis shot Stadler in the head. He then searched the business office for money, took Stadler's wallet, which was on a table, and left. Lewis testified that he planned this on his own and that the defendant

was not present at any time. On the day of the murder, Lewis was wearing black pants and a black hoodie. After the murder, while driving around with a friend, Lewis emptied Stadler's wallet, wiped the fingerprints off, and threw it out the window. Shortly after that, he went to a gas station and called his sister's house. He wanted to speak with Klingel, but Klingel was not there. Lewis did not tell his sister about the shooting at that time or at any later time. Lewis saw Klingel later that night and told him what happened. Klingel wanted a cut of the stolen money. Lewis testified that he went to trial for the murder in December 1997 and that his attorney advised him not to speak with anyone regarding the case. Lewis testified that he would not have testified at the defendant's trial, because he was mainly concerned with his own case. However, on February 17, 1999, he prepared an affidavit indicating that he had acted alone in killing Stadler and he sent the affidavit to the public defender's office.

On cross-examination, Lewis acknowledged that he had testified at his own trial on December 9, 1997. At that time, he denied any involvement in the murder of Stadler. His case ended in a mistrial and he later pled guilty in exchange for a sentence of 25 years' imprisonment. Lewis was scheduled to be released in nine months. On redirect examination, Lewis testified that he had not seen the defendant at any time on the day of the Stadler murder.

Plante testified that she had a 15-year-old son with the defendant. In 1996, she was living with the defendant, their son, and the defendant's mother, in Aurora. On January 15, 1996, the defendant was playing basketball in the backyard with their son, who was two or three at the time. The defendant's two nephews were there as well. The defendant had not left the house between 10 a.m. and 12 p.m. that day. She never spoke with the defendant's attorneys. She was never asked for a statement in the case and she was not subpoenaed. She would have testified on the defendant's

behalf had she been asked. She moved out of the area a couple months after the defendant's arrest and was gone for four years. She returned about three years ago. She was married to someone else. She prepared an affidavit on August 22, 2006, in an effort to help the defendant. She would be willing to testify at a new trial, if one were granted.

On cross-examination, Plante testified that she never spoke to anyone at the public defender's office. She did not know attorney David Kliment and she had never spoken to him. When reminded that her affidavit indicated that she would have testified, but was persuaded not to "by one David Kliment," she stated that she spoke to him on the phone, not face to face. She told attorney Kliment that she had an alibi for the defendant, but he told her it was an open-and-shut case. Plante testified that she had also informed attorney Peccarelli about the alibi prior to trial.

The defendant testified that he was not involved in any way with Stadler's murder. He did not know Stadler and never admitted to killing Stadler. Prior to the day of the murder, he had met Lewis only about two or three times. He was not at the Lewis residence on the morning of January 15, 1996. He was at his mom's house on 743 Front Street in Aurora. He lived there with his son, Plante, two nephews, his mother, and his stepfather. He believed that that day was Martin Luther King's birthday and that his nephews did not have school. That morning, he played in the yard with his son and nephews. He never left the yard or the residence between the hours of 10 a.m. and 12 p.m.

The defendant further testified that, while he was incarcerated on other charges, officers came to speak with him about Stadler's murder. He consistently denied any involvement. He discussed his alibi with attorney Kliment prior to trial. On the day of trial, he asked attorney Kliment why he was not presenting any witnesses, and attorney Kliment said that he was going to beat the case.

Attorney Kliment told him that Lewis's attorneys would not let Lewis testify. When the defendant asked about calling Plante to testify, attorney Kliment told him that there was an outstanding arrest warrant for Plante and that it would not be right for her to show up in court.

Attorney Peccarelli testified that she was the defendant's cocounsel at trial. Prior to trial, she discussed possible defenses with the defendant. Near the time of trial, the defendant mentioned Plante as an alibi witness. An investigator from the office of the public defender interviewed Plante regarding the defendant's case. Attorney Peccarelli did not call Plante to testify, because she thought that Plante had "baggage" and that her testimony would not balance it out. Attorney Peccarelli believed that Plante had been arrested before and possibly had a conviction of a crime of moral turpitude, *i.e.*, obstructing justice. Attorney Peccarelli further testified that she and lead counsel, attorney Kliment, had concluded that the Plante alibi was weak and "agreed that a weak alibi was not as good as just a plain acquittal based on evidence [against the defendant] that wasn't as strong as the State viewed it to be."

Attorney Peccarelli acknowledged, however, that, in hindsight, Plante's testimony would have contradicted the State's witnesses and may have raised a doubt about the defendant's guilt. Attorney Peccarelli believed that the State's case against the defendant was very weak. There was no physical evidence or eyewitness testimony. The star witness, Klingel, had entered into an agreement with the State.

Attorney Peccarelli testified that Lewis's attorney would not allow her to speak with Lewis prior to trial and indicated that, if Lewis were called to testify at the defendant's trial, he would "plead the fifth." There was some indication that Lewis would have testified that he was solely involved in the murder; however, she did not have absolute knowledge about this. She did not think it was

reasonable to request a continuance, because the trial court "made it fairly clear that [the trials] were going to proceed at the same time." Attorney Peccarelli testified that she was surprised by the verdict. At one point the jury was deadlocked and given a *Prim* instruction. The verdict was returned about a half-hour later.

The State then submitted People's exhibit No. 3 into evidence. This exhibit was a transcript of Lewis's sworn testimony at his own trial for Stadler's murder. At his own trial, Lewis testified that he had no involvement in Stadler's death.

Following closing arguments, the trial court noted that under normal circumstances it would have granted the State's motion to dismiss the ineffective assistance claim because the failure to call Plante as an alibi witness was a matter of trial strategy. However, the trial court noted that, as a matter of efficiency, it allowed the claim to go to the third stage with the claim based on newly discovered evidence. The trial court found that the new testimony of Lewis and Plante was not "the slightest bit credible and verge[d] on being worthless." The trial court noted that Lewis's testimony was completely at odds with his own trial testimony and found that Lewis was only trying to help his friend. Relative to Plante, the trial court found her testimony incredible because it was not consistent from direct to cross examination. Finally, the trial court noted that Avila and Rodriguez both put two people at the scene of the crime; Jennifer testified that the defendant was with Lewis on the morning of the murder; and the defendant and Lewis stated at their bond hearings that they had "tricked on" each other. Based on the foregoing, the trial court found that the new testimony of Lewis and Plante was of little or no value and was "not so conclusive in character that it would have changed the outcome of the trial." Accordingly, the trial court denied the defendant's request for postconviction relief. Thereafter, the defendant filed a timely notice of appeal.

The defendant's first contention on appeal is that the trial court erred in failing to grant him a new trial based on the Lewis affidavit. "In Illinois, newly discovered evidence warrants a new trial when: (1) it has been discovered since the trial; (2) it is of such a character that it could not have been discovered prior to the trial by the exercise of due diligence; (3) it is material to the issue and not merely cumulative; and (4) it is of such a conclusive character that it will probably change the result on retrial." *People v. Gabriel*, 398 Ill. App. 3d 332, 350 (2010). The new evidence need not necessarily establish the defendant's innocence; rather, a new trial is warranted if all of the facts and surrounding circumstances, including the new evidence, warrant closer scrutiny to determine the guilt or innocence of the defendant. *People v. Molstad*, 101 Ill. 2d 128, 136 (1984) (*Molstad II*). Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts and must be closely scrutinized. *People v. Molstad*, 112 Ill. App. 3d 819, 821 (1983) (*Molstad I*). A trial court's denial of a postconviction petition following an evidentiary hearing is reviewed for manifest error. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). "Manifest error" is error that is clearly plain, evident, and indisputable. *People v. Morgan*, 212 Ill. 2d 148, 155 (2004).

In arguing that he is entitled to a new trial, the defendant relies on *Molstad II*. In *Molstad II*, our supreme court granted the defendant's request for a new trial based on newly discovered evidence. *Molstad II*, 101 Ill. 2d at 137. Molstad had been convicted of aggravated battery and criminal damage to property. *Id.* at 130. Prior to sentencing, Molstad's lawyer filed a motion for a new trial based on the affidavits of four convicted codefendants and one acquitted codefendant, which stated that Molstad was not present at the scene of the crime. *Id.* at 132.

The *Molstad II* court found that the affidavits qualified as newly discovered evidence because the affidavits were completed after Molstad's conviction and the codefendants could not have been

called to testify at Molstad's trial, as their testimony would have incriminated them. *Id.* at 134-35. The *Molstad II* court further found that no amount of due diligence could have forced the codefendants to violate their fifth amendment right to avoid self-incrimination. *Id.* at 135. The *Molstad II* court also found that the evidence was not cumulative, because, although Molstad had offered alibi testimony at trial, the five new affidavits went to the ultimate issue of who was present at the crime scene and raised questions as to the trial court's judgment. *Id.*

Finally, the *Molstad II* court found that the newly discovered evidence was likely to produce a different result on retrial. *Id.* at 135-36. On retrial, the trial court would have to balance the testimony of a single eyewitness against Molstad's denial of his presence, his parents' alibi testimony, five codefendants who insisted that Molstad was not present, and evidence that Molstad had broken up a fight earlier in the day between the victim and one of the codefendants. *Id.* at 136.

In the present case, *Molstad II* supports a determination that the defendant has satisfied the first three prongs necessary to warrant a new trial based on newly discovered evidence. See *id.* at 134-35. The Lewis affidavit was newly discovered evidence because it was not executed until two years after the defendant's conviction. Lewis was being tried at the same time as the defendant and no amount of due diligence could have forced Lewis to testify at the defendant's trial and violate his fifth amendment right against self-incrimination. At the evidentiary hearing, Lewis testified that his trial counsel advised him not to speak to anyone and that he would have asserted his privilege against self-incrimination had he been called to testify at the defendant's trial. Finally, the evidence is material, and not merely cumulative, because the defendant did not present any evidence on his own behalf at his trial and Lewis both averred and testified that the defendant had not participated in the murder.

However, we find *Molstad II* distinguishable on the issue of whether the newly discovered evidence was of such a conclusive character that it would likely produce a different result on retrial. In *Molstad II*, the affidavits were presented after the codefendants had been found guilty, but prior to their sentencing. *Id.* at 134. Therefore, the codefendants put themselves at risk because their own credibility could be a factor in their sentencing determinations. Conversely, here, Lewis's affidavit was executed on February 17, 1999, about two years after Lewis pled guilty and was sentenced. Moreover, the trial court noted that Lewis was scheduled to be released from prison within nine months of his testimony at the evidentiary hearing. Lewis's admissions, therefore, could have no bearing upon his ultimate disposition or any postconviction proceedings. See *People v. Jones*, 399 Ill. App. 3d 341, 365 (2010) (distinguishing *Molstad II* on this same basis). The defendant argues that Lewis's affidavit and testimony opened Lewis up to a possible perjury charge. However, in light of Lewis's ultimate plea agreement, it is unlikely that the State would have pursued such a charge.

Additionally, in *Molstad II*, the trial court did not assess the credibility of the testimony provided by the new witnesses. In the present case, however, Lewis testified at the evidentiary hearing and the trial court found his testimony "not the slightest bit credible" and that it "verge[d] on being worthless." The trial court noted that Lewis was impeached with his statements at his own trial, where he had testified that he was not involved in Stadler's murder. Additionally, the trial court noted that the testimony of disinterested witnesses supported a determination that the defendant was present at the scene of the murder. Despite Lewis's testimony that he had not seen the defendant at all on the day of the murder, Rodriguez testified that she saw the defendant and Lewis together on the morning of the murder. Additionally, Avila testified that she saw two people running from the direction of Stadler's rental office at about the time of the murder. The trial court also noted the

exchange in which the defendant and Lewis said that they had "tricked on" each other. On these bases, the trial court found that Lewis was not credible and that he was just trying to help his friend. Credibility determinations such as this are properly made by the trier of fact, and we have no basis in the record for second-guessing the trial court's judgment. See *Gabriel*, 398 Ill. App. 3d at 352 (distinguishing *Molstad II* on the basis that the trial court had not "assess[ed] the credibility of the testimony provided by the new witnesses").

Thus, we agree that Lewis's testimony would not likely change the result on retrial. We acknowledge that the "most crucial and devastating" testimony to the defendant's case was Klingel's testimony that the defendant had admitted to murdering Stadler and taking his money (see *Gonzalez I*, slip op. at 17), but that Klingel had testified in exchange for certain concessions from the State. We further acknowledge that the jury deliberated for 11 hours and, at one point, indicated that it could not reach a verdict. However, "[a]n allegation of newly discovered evidence of innocence is not intended to question the strength of the State's case. An allegation of newly discovered evidence of innocence seeks to establish the defendant's actual innocence of the crimes for which he has been tried and convicted." *People v. Washington*, 171 Ill. 2d 475, 495 (1996) (McMorrow, J., specially concurring). Although new evidence need not necessarily establish the defendant's innocence, it must establish a basis for closer scrutiny of the defendant's guilt. *Molstad II*, 101 Ill. 2d at 136. In the present case, we cannot say that the defendant has met that bar. Lewis's testimony was not so conclusive as to the defendant's alleged actual innocence to establish a basis for a retrial. Although Lewis averred and testified that he acted alone, other testimony at trial indicated that Lewis and the defendant were together on the morning of the murder. As such, if Lewis was the one who actually committed the murder, it is likely that the defendant was with him and participated in the crime.

Accordingly, we cannot say that the trial court's decision, finding that the new evidence did not warrant a new trial, was manifestly erroneous.

The defendant's second contention on appeal is that the trial court erred in denying his claim based on the alleged ineffective assistance of trial counsel in failing to call Plante as an alibi witness. At the outset, we note that the State argues that, based on this court's remand order, the trial court was limited to holding an evidentiary hearing regarding the Lewis affidavit and the trial court did not have the authority to allow the defendant to amend his postconviction petition. On remand, a trial court has no authority to act beyond the scope of the mandate. *People v. Abraham*, 324 Ill. App. 3d 26, 30 (2001). If the direction of the mandate is to proceed in conformity with the opinion, then the opinion must be consulted in determining the appropriate course of action. *People ex rel. Bernardi v. City of Highland Park*, 225 Ill. App. 3d 477, 482 (1992). The entire opinion is relevant. *Abraham*, 324 Ill. App. 3d at 30. "If specific directions are not given, but the remand instructions are general in nature, *** then the lower court should examine the opinion and determine what further proceedings would be consistent with the opinion." *Bernardi*, 225 Ill. App. 3d at 482. It is axiomatic that a reviewing court that issues a mandate has the power to enforce the mandate and determine whether there has been compliance.

In the present case, the mandate stated, in general terms: "[I]n accordance with the views expressed in the attached Decision the judgment of the trial court is Vacated and Remanded." Accordingly, the order had to be consulted. In the order our mandate was also general; we stated that the case was "vacated and remanded for an evidentiary hearing on the defendant's postconviction petition." *Gonzalez II*, slip op. at 7. In the body of our order, we noted that the hearing had to address whether, for the purposes of the newly-discovered-evidence claim, "Lewis's affidavit [was]

of such conclusive character that it would probably change the result on retrial." *Id.* However, we did not otherwise dictate the scope of the evidentiary hearing. Thus, the trial court's action in allowing the defendant to amend his postconviction petition and to present the new claim at the evidentiary hearing did not exceed our mandate. We will therefore address the merits of the claim.

To establish a claim of ineffective assistance, the defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). The defendant's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *People v. Palmer*, 162 Ill. 2d 465, 475 (1994). Trial counsel's decision whether to present a particular witness is within the realm of strategic choices that are generally not subject to attack on the grounds of ineffectiveness of counsel. *People v. Tate*, 305 Ill. App. 3d 607, 612 (1999). Errors in strategy do not constitute ineffective assistance of counsel. *People v. Krankel*, 131 Ill. App. 3d 887, 892 (1985).

In the present case, the defendant has failed to establish his claim of ineffective assistance. The record demonstrates that the decision of defense counsel, not to call Plante as an alibi witness, was strategic. We note that *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984), protects the "decisions" and "judgments" of counsel; "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable ***." At the evidentiary hearing, attorney Peccarelli testified that, prior to the defendant's trial, she and the defendant discussed his alibi witness and the public defender's office investigated the alibi. Attorney Peccarelli testified that she chose not to call Plante, because Plante had "some baggage" and her purported trial testimony could not "balance out the baggage that she came with." Attorney Peccarelli further testified that she

and lead counsel, attorney Kliment, had concluded that the Plante alibi was weak and "agreed that a weak alibi was not as good as just a plain acquittal based on evidence [against the defendant] that wasn't as strong as the State viewed it to be." As such, both attorneys agreed that the best defense was to focus on the weakness of the State's case and to avoid offering a weak alibi. Moreover, because of Plante's relationship with the defendant, she likely would not have been considered credible. See *People v. Barcik*, 365 Ill. App. 3d 183, 192-93 (2006) (because of her relationship to the defendant, the defendant's fiancée likely would not have been considered a credible witness) (and cases cited therein). As such, because the record demonstrates that the decision not to call Plante to testify was a matter of reasonable trial strategy, the defendant's claim of ineffective assistance necessarily fails. *Tate*, 305 Ill. App. 3d at 612. The fact that attorney Peccarelli, in hindsight, may have handled the trial differently is not an indication of incompetence. See *People v. Elder*, 73 Ill. App. 3d 192, 203 (1979).

For all of the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.