2025 IL App (2d) 240172
No. 2-24-0172
Opinion filed March 20, 2025

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07-CF-1821 |
| MICHAEL J. REYES, | ) ) | Honorable René Cruz, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Michael J. Reyes, was convicted by a Kane County jury in 2013 on six counts of first degree murder (720 ILCS 5/9-1(a)(1), (2), (3) (West 1992)) for the 1993 shooting deaths of brothers Jesus and Francisco Montoya. We affirmed defendant's conviction on direct appeal. See *People v. Reyes*, 2015 IL App (2d) 130832-U (*Reyes I*). Defendant filed a postconviction petition alleging, *inter alia*, ineffective assistance of trial counsel for failing to investigate and call alibi witnesses. Following the dismissal of the petition at the second stage of postconviction proceedings, we reversed and remanded for a third-stage evidentiary hearing. *People v. Reyes*, 2022 IL App (2d) 210143-U (*Reyes II*). On remand, the trial court conducted an evidentiary hearing but refused to allow defendant to testify. The trial court ultimately denied defendant's

petition and defendant appeals. For the following reasons, we remand for additional third-stage postconviction proceedings consistent with this order.

¶ 2                                    I. BACKGROUND

¶ 3     As the facts are well known to the parties and set forth in detail in our previous decisions, we set forth only those facts relevant to this appeal. See *Reyes I*, 2015 IL App (2d) 130832-U; *Reyes II*, 2022 IL App (2d) 210143-U.

¶ 4     On March 9, 1993, the Montoya brothers were found shot to death in a van parked on a residential street in Aurora. The State's theory was that the brothers were selling cocaine and encroached upon the Latin Kings street gang's territory. Defendant, a member of the Latin Kings, was charged with their murders in June 2007. While there was no direct physical evidence, defendant was linked to the murders through testimony from several individuals. Many of the individuals were Latin Kings members either convicted of or charged with unrelated crimes who cooperated with the government. One individual was defendant's former coworker. In general, those witnesses testified that defendant admitted to them that he committed the murders and provided details, such as that he shot the brothers with a .45-caliber gun and took the brothers' cocaine. The former coworker additionally testified that defendant told him that defendant's mother and girlfriend would provide an alibi. There was also a confidential informant who told a police officer that two Chicagoans, Victor Cortez and Hector Montanez, committed the murders. The confidential informant also stated that "Michael" (no last name given) set up the meeting between the Montoya brothers and these two men. However, by the time defendant was charged, the police officer could no longer recall the name of the informant.

¶ 5     Following a week-long trial, a Kane County jury found defendant guilty of three counts of first degree murder as to each brother, for a total of six convictions. He was sentenced to natural

life in prison. We affirmed defendant's conviction on direct appeal. *Reyes I*, 2015 IL App (2d) 130832-U.

¶ 6    Defendant filed a petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) in November 2015. Defendant filed a supplemental petition in December 2018 arguing, *inter alia*, that his trial counsel was ineffective by failing to interview and present alibi witnesses at his trial. The supplemental petition included affidavits from defendant's mother, Teresa Martinez, and sister, Danielle Reyes. In their affidavits, Teresa and Danielle stated that they lived in the same house as defendant in 1993. They claimed that, on the night of the murders, defendant was at home all day and evening with his then-girlfriend, Sylvia Ortiz. They stated that they repeatedly tried to give this information to defendant's trial counsel but trial counsel never had time to speak with them. They stated that they were at the trial every day and could have testified.

¶ 7    In September 2019, the State moved to dismiss the petition. The State argued that defendant's trial counsel was not ineffective by failing to call Teresa and Danielle as alibi witnesses, because that decision was a matter of trial strategy. In February 2021, following a hearing, the trial court granted the State's motion. The trial court found that it was sound trial strategy not to call Teresa and Danielle as alibi witnesses, since they were family members and the affidavits did not specifically indicate that they laid eyes on defendant in the house on the night of the murders.

¶ 8    On appeal, we reversed the dismissal of defendant's ineffective assistance claim based on trial counsel's failure to call Teresa and Danielle as alibi witnesses and remanded for a third-stage evidentiary hearing. *Reyes II*, 2022 IL App (2d) 210143-U, ¶ 58. We determined that, based on the record at that stage of the proceedings, there was no apparent reason for trial counsel not to call

Teresa and Danielle when there was no physical evidence linking defendant to the murders. *Id.* ¶ 45. Thus, defendant was entitled to an evidentiary hearing on that claim. *Id.*

¶ 9     On remand, the trial court conducted the evidentiary hearing. Teresa testified that on March 8, 1993, she left work around 2:30 p.m., picked up her youngest daughter, Raquel Martinez, from Teresa's mother's house, and arrived at her home at 3:45 p.m. Next door to the home was a business. She explained that the home had a gravel driveway but no one could park in it because it would block access to the business. Instead, people parked in the parking lot behind the business. Teresa testified that, when she arrived home that day, she saw Sylvia's car in the parking lot. She parked next to Sylvia's car and entered the home.

¶ 10    After she entered the home, Teresa could hear defendant and Sylvia on the second floor. She testified that she yelled upstairs to let defendant know that she was home and he responded. After this, she changed clothes and watched television in the living room. Teresa stated that Danielle returned home around 7:30 p.m.

¶ 11    Teresa described the home as a large "old house." There were two doors, one in the front and one on the "back-side" of the home. She explained that no one used the front door, but only the back-side door. The home had two stories. The second floor had three bedrooms, including defendant's room. The first floor had a kitchen, dining room, living room, bathroom, and Teresa's bedroom. The back-side door was located near the kitchen. The stairwell was also located in the kitchen. The bathroom was directly outside the kitchen. The dining room was also just outside the kitchen, and the living room was off the dining room. Teresa's bedroom was adjacent to the living room and four to five feet from the back-side door. Teresa's bedroom did not have a door.

¶ 12    Teresa testified that she could hear defendant and Sylvia come downstairs to use the bathroom and return upstairs throughout the evening. Around 11 p.m., she stopped watching

television and went to her bedroom. She fell asleep around 11:30 p.m. Teresa said that she was a light sleeper. Her room was located directly beneath defendant's room. She stated that she had undisturbed sleep from 11:30 p.m. until 5 a.m. the next morning. She did not hear any noises in the home and did not hear anyone leave or enter the home. After she woke up, she yelled upstairs to wake defendant up for work and he responded. She also saw Sylvia's car in the parking lot.

¶ 13    Teresa had two reasons for remembering that night. First, she recalled that Frank Montoya[1] called the house about three times. Each time he called, Teresa yelled up to defendant and he told her to say that he was not home. Defendant and Frank had been friends for about 10 years, and Teresa said this was the first time he called the home. The second reason she recalled that night was because on March 10, 1993, police officers came to her job and asked for permission to search her home. Police told her that the Montoya brothers were murdered and that defendant would likely be charged. Teresa signed a consent form for the officers to search the home. Later, she received a call that the officers were searching the home, so she left work. While searching the home, officers found a firearm under Danielle's bed. Police took Danielle to the Aurora police station, and Teresa followed them.

¶ 14    Teresa recalled that defendant was charged with the murder of the Montoya brothers several years later. Teresa explained that she attended each of defendant's court dates. During that time, she met defendant's trial counsel, Julia. She did not recall Julia's last name. Teresa said she told Julia that defendant was at home the night of the murders. Teresa felt that Julia did not listen to her and "push[ed]" her away. Teresa also spoke with Julia's investigators, to whom she told the same information about defendant being home on the night of the murders. She said that Julia told her before trial that Julia was aware of the potential alibi information. Teresa also said that Julia

---

[1]The record indicates that Francisco Montoya was also known as Frank.

told her that she would be called as a witness by the State. However, Teresa was never called by either the State or the defense. On cross-examination, Teresa admitted that she never actually saw defendant or Sylvia in the home on the night of the murders.

¶ 15    Defendant sought to testify next. However, the State objected. The State argued that defendant's testimony was not included in the petition and was outside the scope of our remand order. Defendant's counsel argued that defendant was entitled to testify regarding his conversations with trial counsel about a potential alibi defense. The trial court sustained the State's objection. It explained that the petition included no allegations that defendant made any statements regarding an alibi defense but, rather, "focuse[d] on these affidavits of the two individuals that the issue was their communication with" trial counsel regarding defendant's alibi "and her not being effective and not bringing to court that information before trial." The trial court also found it inconsistent with "the remand, and the instructions provided by the Appellate Court as to what [the trial court was] supposed to do on this at this stage." The defense rested after this ruling.

¶ 16    Defendant's trial counsel, Julia Yetter,[2] testified for the State. Yetter, who was formerly an assistant public defender in Kane County,  began representing defendant in April 2012. Yetter said that, in over a decade as a public defender prior to representing defendant, she represented multiple defendants accused of murder, including at least one facing the death penalty. Yetter was defendant's lead trial counsel, but she was assisted by two other assistant public defenders. She also stated that two investigators were assigned to the case.

¶ 17    Yetter said that she was aware of multiple potential alibi witnesses prior to trial. In her response to the State's discovery requests, which was admitted into evidence at the hearing, Yetter

---

[2]At the time of the hearing, Yetter was an associate judge in Kane County.

stated that defendant "may seek to assert the defense of alibi." Yetter learned of the first potential alibi while reviewing the State's discovery materials. She learned that police spoke with Sylvia during their initial investigation of the murders and Sylvia provided an alibi for defendant. However, in subsequent conversations with police, Sylvia could no longer recall whether she was with defendant on the night of the murders. Yetter later learned from discussions with her team that Teresa and Danielle could also provide a potential alibi for defendant. Yetter recalled, however, that Teresa was unable to say whether she actually saw defendant on the night of the murders. Yetter could not recall whether Sylvia's initial alibi was consistent with Teresa's alibi.

¶ 18    Yetter testified that she determined that the best trial strategy was to attempt to discredit the State's witnesses, as many of them were testifying under agreements with State and federal prosecutors. She said several factors ultimately contributed to determining that presenting an alibi defense was not an appropriate trial strategy. The most significant factor was the strength of the alibi. She said that Sylvia's "waffling" in her story created a concern about the strength of Sylvia's testimony at trial. She also had doubts regarding the strength of the alibi testimony that Teresa and Danielle could provide, since they were family members. She was especially concerned that March 8, 1993, had no significance to either of them, so the jury would question their credibility.

¶ 19    Yetter also believed that presenting the alibi defense could open the door for the State to introduce harmful evidence in rebuttal. She recalled that the State's discovery showed phone calls from the number associated with defendant's home to an individual in Chicago. The State had information that an individual in Chicago may have assisted in the planning of the brothers' murders. The State did not present much evidence related to this in its case-in-chief, thus Yetter did not want to open the door to it on rebuttal.

¶ 20    On cross-examination, Yetter admitted that she did not personally interview Teresa before trial but that members of her team did. She said they told her that Teresa would testify that she never saw defendant on the night of the murders. They also told Yetter that Teresa did not provide them with anything specifically remarkable about the date of the murders that would explain Teresa's recollection. Yetter testified that she could not independently recall that Teresa signed a consent form to search the home on March 10, 1993, but she maintained that she would have been aware of it before trial if it was in the State's discovery. Yetter did recall that Danielle was arrested, but she did not recall if the arrest occurred on March 10, 1993. Yetter admitted that those events, if they occurred on March 10, 1993, could provide a reason for a person to remember the events from two days earlier.

¶ 21    After closing arguments, the trial court issued an oral ruling denying the petition. The trial court found that defendant failed to prove that Yetter's performance was deficient and therefore failed the first prong under *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[3] The trial court noted the inconsistencies between Teresa's affidavit and her testimony at the hearing. The trial court found it significant that the affidavit did not mention the events of March 10, 1993, and therefore questioned whether Teresa informed the defense team about that information. It also found significant that, when she spoke to police two days after the murders, Teresa did not tell the police that defendant was home with her. The trial court also explained that it believed the defense team thoroughly investigated all potential defenses and it could not conclude that Yetter's strategic

---

[3]The trial court declined to make any finding as to the second prong—whether defendant was prejudiced by Yetter's performance. See *Strickland*, 466 U.S. at 687.

decision not to present an alibi defense constituted deficient performance. Defendant timely appealed.

¶ 22                                    II. ANALYSIS

¶ 23    The Act provides a means by which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). The Act sets forth three stages of review. At the first stage, the trial court may summarily dismiss a postconviction petition as frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020). If the petition is not dismissed, it advances to the second stage. *Id.* § 122-2.1(b).

¶ 24    At the second stage of a postconviction proceeding, the State may move to dismiss a petition or an amended petition pending before the trial court. *Id.* § 122-5. At this stage, the trial court must determine whether the petition and the accompanying documentation make a " 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶ 33 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). If the petition satisfies this standard, the defendant is entitled to a third-stage evidentiary hearing at which the trial court acts as the fact finder and determines whether the evidence introduced demonstrates that the defendant is entitled to relief. *Id.* ¶ 34.

¶ 25    At the third stage of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). When a petition is advanced to a third-stage evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a trial court's decision unless it is manifestly erroneous. *Id.* "Manifest error is error that is 'clearly evident, plain, and indisputable.' " *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (quoting *People v. Morgan*, 212 Ill. 2d 148, 155 (2004)). Whether to admit evidence during an evidentiary hearing is within the sound discretion

of the trial court and will not be reversed unless there is a clear showing of abuse of discretion by the trial court. *People v. Jones*, 2012 IL App (1st) 093180, ¶ 52. An abuse of discretion exists when the evidentiary rulings are "arbitrary, fanciful, or unreasonable." (Internal quotation marks omitted.) *Id.*

¶ 26    Under the two-prong *Strickland* test, "a defendant must show that (1) his counsel's performance *** fell below an objective standard of reasonableness, and (2) *** but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Houston*, 226 Ill. 2d 135, 144 (2007). Because a defendant must satisfy both prongs of the *Strickland* test, the failure to establish either is fatal to the claim. *Strickland*, 466 U.S. at 687. There is a strong presumption that counsel's actions or inactions—such as the decision not to present certain arguments or not to call witnesses—constitute sound strategy. *People v. Perry*, 224 Ill. 2d 312, 341-42 (2007). To prove otherwise, a party must show that counsel's decision was so irrational and unreasonable that no reasonably effective attorney, facing like circumstances, would pursue such a strategy. *People v. Jones*, 2012 IL App (2d) 110346, ¶ 82.

¶ 27    Defendant's sole contention on appeal is that the trial court erred in not letting him testify. Specifically, he argues that the trial court's two asserted bases for denying him the opportunity to testify were incorrect. We agree.

¶ 28    First, the trial court denied defendant the opportunity to testify, because his testimony was not included as part of the petition. However, our supreme court has made clear that the "Act does not require that a defendant attach to a post-conviction petition the entire record necessary to adjudicate the merits of the asserted constitutional claim. Rather, under the Act, the purpose of the

post-conviction petition is to permit the court to determine whether to grant an evidentiary hearing." *People v. Thompkins*, 181 Ill. 2d 1, 16 (1998). Moreover,

> " 'where the claims are based upon matters outside the record \*\*\* it is not the intent of the [A]ct that these claims be adjudicated on the pleadings. The function of the pleadings in a proceeding under the [A]ct is to determine whether the petitioner is entitled to a hearing. If the trial court determines that the allegations of the petition are sufficient to require a hearing, the petitioner must be afforded an opportunity to prove his allegations.' " *Id.* (quoting *People v. Airmers*, 34 Ill. 2d 222, 226 (1966)).

Under this legal framework, the supreme court in *Thompkins* found that it was error for the trial court to deny the defendant's expert witness the opportunity to testify simply because it was not part of the petition. *Id.* Thus, under *Thompkins*, it was error for the trial court here to refuse defendant the opportunity to testify because his testimony was not raised in the petition.

¶ 29 Second, the trial court asserted that allowing defendant to testify would go against our remand mandate. It is well established that on remand a trial court has no authority to act beyond the scope of the appellate mandate. *People v. Gonzalez*, 407 Ill. App. 3d 1026, 1036 (2011). However, our prior order did not limit the scope of the evidentiary hearing on remand. In that order, we determined that the petition made a substantial showing of a constitutional violation as to the claim of ineffective assistance of counsel and we remanded for a hearing on that claim. *Reyes II*, 2022 IL App (2d) 210143-U, ¶¶ 42-48. Our mandate generally stated, "We reverse the dismissal of the defendant's claim that defense counsel was ineffective in failing to call alibi witnesses at trial and we remand for an evidentiary hearing on that claim." *Id.* ¶ 58. It has specifically been recognized that such generalized language does "not otherwise dictate the scope of the evidentiary hearing." *Gonzalez*, 407 Ill. App. 3d at 1038. Thus, our mandate did not direct

the trial court to proceed in any particular way with respect to an evidentiary hearing. Therefore, both stated reasons for the trial court to deny defendant the opportunity to testify were erroneous.

¶ 30    In reaching this conclusion, we are also persuaded by the First District's decision in *People v. Martinez*, 2019 IL App (1st) 171533-U.[4] In that case, the defendant, who was convicted of first degree murder, alleged in his postconviction petition that his trial counsel was ineffective for failing to investigate and call certain witnesses in his defense. *Id.* ¶ 20. The trial court conducted a third-stage evidentiary hearing following remand from the appellate court. *Id.* ¶ 33. At the evidentiary hearing, the trial court ruled that a witness, Mr. Amaya, would not be allowed to testify because his testimony was not raised in the defendant's postconviction petition and was "not contemplated by or related to any issue identified by" the appellate court's remand order. *Id.*

¶ 31    On appeal, the appellate court determined that, "[p]ursuant to the *Thompkins* decision, it was error for the [trial] court to refuse to permit Mr. Amaya to provide that potentially corroborating [testimony] at the hearing merely because that testimony was not previously and specifically 'raised' in postconviction petitions filed by defendant." *Id.* ¶ 63. Further, the appellate court's prior order "did not contain any *specific* limitation on the evidentiary hearing [it] directed the circuit court to conduct on remand." (Emphasis in original.) *Id.* ¶ 65. The prior order "remanded for an evidentiary hearing after concluding that 'defendant ha[d] made a substantial showing of ineffective assistance of trial counsel based on the failure to investigate the testimony of witnesses.' " *Id.* ¶ 64 (quoting *People v. Martinez*, 2014 IL App (1st) 112794-U, ¶ 47). Thus, the court determined that its "mandate did not direct the [trial] court to proceed in any particular

_____

[4]We may rely on the reasoning of a nonprecedential decision. *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 21 n.1.

way with respect to an evidentiary hearing," and it was therefore error for the trial court to exclude the testimony based on the purported limitation of the mandate. *Id.* ¶¶ 65, 67.

¶ 32    Here, too, it was error for the trial court not to allow defendant the opportunity to testify simply because his testimony was not identified in the petition. Defendant's testimony is potentially relevant, as it could corroborate Teresa's testimony and possibly shed light on what Yetter knew before trial. It was also erroneous for the trial court to refuse defendant the opportunity to testify because it was outside the purported scope of our remand mandate. Similar to the order in *Martinez*, our previous order did not direct the trial court to proceed in any specific manner with respect to the evidentiary hearing. Nor did our previous order in any way limit the witnesses who could testify or the evidence that could be presented. Again, defendant's testimony could possibly be relevant to the sole issue for which we remanded—whether defendant was denied the effective assistance of counsel for failing to call any alibi witnesses. Accordingly, we hold that the trial court's reasons for denying defendant the opportunity to testify were erroneous.

¶ 33    "The evidentiary hearing is rendered incomplete" because of our holding, and we therefore cannot reach the ultimate question of whether defendant was deprived of his constitutional right to the effective assistance of counsel. *Thompkins*, 181 Ill. 2d at 20 (citing *People v. Montgomery*, 162 Ill. 2d 109, 113 (1994)). Our supreme court has recognized that in such situations we should remand to the trial court and direct it to reopen the evidentiary hearing to address the evidentiary errors. *Id.* at 20-21; see *Martinez*, 2019 IL App (1st) 171533-U, ¶ 96. This is especially true where, as here, the trial court acted under the mistaken belief that it lacked the discretion to allow the testimony. See *Martinez*, 2019 IL App (1st) 171533-U, ¶ 84 (the trial court's decision "was caused by the [trial] court's incorrect understanding that such testimony was beyond the purportedly limited scope of this court's prior remand for an evidentiary hearing. As such, the [trial] court

clearly and incorrectly believed it had no discretion in the matter"). "Where a trial court erroneously believes it has no discretion or authority to perform some act, the appellate court should not preempt the exercise of such discretion, but should remand the cause back to the trial court." *Greer v. Yellow Cab Co.*, 221 Ill. App. 3d 908, 915 (1991); see *Martinez*, 2019 IL App (1st) 171533-U, ¶ 85 ("The appellate court must not usurp the trial court's function in exercising its discretion.").

¶ 34    Therefore, we must remand for the trial court to determine whether, in its discretion, defendant should be allowed to testify. See *Martinez*, 2019 IL App (1st) 171533-U, ¶ 84. We express no opinion on the merits of that question. See *People v. Partee*, 268 Ill. App. 3d 857, 869 (1994). If the trial court determines that defendant may testify, the trial court should make new factual findings regarding whether defendant was denied his constitutional right to the effective assistance of counsel. *Thompson*, 181 Ill. 2d at 20. The trial court "may rely on the record and need not receive the rest of the evidence a second time. Of course, it may in its discretion allow either side to re-present evidence to the extent it feels that reception will aid it in making its ultimate findings." *Montgomery*, 162 Ill. 2d at 113.

¶ 35                                         III. CONCLUSION

¶ 36    For the reasons stated, this cause is remanded to the circuit court of Kane County with directions to reopen the third-stage postconviction evidentiary hearing for the limited purposes specified in this order.

¶ 37    Remanded with directions.

*People v. Reyes*, **2025 IL App (2d) 240172**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 07-CF-1821; the Hon. René Cruz, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and Zachary Wallace, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and David Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |