2020 IL App (1st) 170750-U

FOURTH DIVISION
April 23, 2020

No. 1-17-0750

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 96 CR 18348 |
| ERIC LASH, | ) ) | |
| Defendant-Appellant. | ) ) ) ) ) | Honorable Maura Slattery Boyle, Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Upholding the circuit court's denial of the defendant's postconviction petition after a third-stage evidentiary hearing where the circuit court properly conducted the hearing within the scope of the mandate.

¶ 2     Defendant Eric Lash appeals from the circuit court's denial of relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) after a third-stage evidentiary hearing on his actual innocence claim. On appeal, defendant contends the circuit

court failed to comply with this court's mandate on remand where the circuit court allowed the State to introduce privileged and prejudicial testimony from defendant's trial attorney. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      Following a joint bench trial in July 1997, defendant and codefendant Parise Tolbert were convicted of aggravated discharge of a firearm and first degree murder under a felony-murder theory in the shooting death of the nine-year-old victim, Donetta Poole. The convictions merged at sentencing and defendant was sentenced to natural life in prison. Because defendant's postconviction claim is one of actual innocence, it is necessary to set out the trial evidence in some detail.

¶ 5                                       Trial

¶ 6      At trial, the evidence established that the victim was shot and killed by a stray bullet fired from the weapon of Joseph Taylor during an altercation with a group which included defendant, Tolbert, and Carlos Bellamy. Defendant, Tolbert, and Bellamy were indicted for, *inter alia,* first degree murder based upon a felony-murder theory with the predicate felony being mob action. Defendant and Tolbert proceeded to a joint bench trial.

¶ 7      At trial assistant State's attorney John Kirby testified that after speaking with Bellamy at a police station, he transcribed Bellamy's statement. This statement was then admitted into evidence and published without objection. In his statement, Bellamy stated that he was a member of the Gangster Disciples gang (GD), and "hung out" on 64th and Talman with fellow GDs defendant, Derrick Lash (Derrick), Tolbert, Richard Barnes, and "Little Kenny." He further stated that he used to hang out with the GDs at 64th and Fairfield which included, among others, Joseph Taylor and Dantae Redding.

¶ 8 On June 21, 1996, Bellamy and Little Kenny went to 64th and Fairfield to talk to Redding because Redding had been disrespecting Little Kenny. A verbal altercation ensued. Later that evening, Bellamy and Little Kenny were approached by a group of individuals including Redding and Taylor. A fistfight ensued and Bellamy and Redding were eventually separated. As Redding and his companions were departing after the argument, one yelled they were going to "strap up," that is, get handguns. About an hour later, defendant, Derrick, and Tolbert arrived in defendant's van. After Bellamy told them what happened, defendant suggested the group go over to "Fairfield." Once there, defendant began arguing with Redding. Taylor was also present during this argument. Eventually the men began fighting. When Bellamy and his group left, someone from the Fairfield group yelled that it was "on," and Derrick responded they would be back. The men then went to a location where they kept their weapons. There, defendant armed himself with a .380 caliber handgun. Defendant then drove to collect Richard Baines, and the group went to Taylor's residence. At one point, defendant yelled that Taylor was coming. Bellamy noticed Taylor jogging toward him holding a .45 caliber handgun. Taylor then fired at the van. As Bellamy ran to the van, he observed Derrick and Tolbert fire either at Taylor, or in Taylor's direction. As Bellamy's group drove away, Derrick again fired at Taylor.

¶ 9 Richard Baines, who had a pending home invasion case at the time of trial and had previously pled guilty to possession of a controlled substance, testified that he entered a van with defendant, Derrick, Tolbert, and Bellamy. Defendant was driving the vehicle. Once inside, the men told him that they were "locking up" on Fairfield, *i.e.,* going there for a fight. He testified consistently with Bellamy's statement regarding the arrival of Taylor. After engaging in a verbal altercation with Derrick, Taylor fired his weapon. Baines also observed Derrick and Tolbert fire

their firearms. Ultimately, everyone returned to the van and defendant drove away. As they left, defendant noticed Taylor standing in a gangway and Derrick shot at him.

¶ 10    Joseph Taylor testified he was the person responsible for firing the bullet which killed the victim. He identified Baines, Derrick, Tolbert, and Bellamy as present when the shooting occurred.

¶ 11    Ultimately, the trial court found defendant guilty of mob action, aggravated discharge of a firearm, and felony murder predicated upon mob action. Defendant was subsequently sentenced to natural life in prison. Defendant's convictions and sentence were affirmed on direct appeal. *People v. Lash*, Nos. 1-98-0823, 1-98-0824 (cons.) (1999) (unpublished order under Illinois Supreme Court Rule 23 (eff. July 1, 1994)).

¶ 12                        Postconviction Proceedings

¶ 13    In 2000, defendant filed a postconviction petition alleging his indictment for mob action was improperly amended without being presented to the grand jury, and the statute pursuant to which he was convicted was found unconstitutional. The circuit court denied defendant relief.

¶ 14    On appeal, this court vacated defendant's sentence and remanded the cause for resentencing, while affirming all other aspects of the circuit court's ruling. *People v. Lash*, No. 1-01-1105 (2002) (unpublished order under Illinois Supreme Court Rule 23 (eff. July 1, 1994)). On remand in September 2004, defendant was sentenced to 40 years in prison.

¶ 15    In December 2005, defendant filed a *pro se* motion for postconviction relief alleging, *inter alia,* ineffective assistance of trial and appellate counsel. After the circuit court found that the petition demonstrated a gist of a constitutional claim, the petition was docketed and postconviction counsel was appointed.

¶ 16    Defendant then filed a *pro se* supplemental postconviction petition alleging, *inter alia,* he

was actually innocent and he was denied due process when the trial court failed to inform him of the term of mandatory supervised release he must serve upon his release from prison. The petition was supported by the affidavits of defendant, Derrick, Bellamy, Tolbert, and Joann Davies.

¶ 17    Defendant averred in his affidavit that after the fight, Derrick, Tolbert, and Bellamy dropped him off at his residence. Defendant further averred that he remained at his residence with Davies and was later informed about the shooting. Bellamy's affidavit averred he mistakenly told the police defendant drove the van back to 64th and Fairfield because he, Bellamy, was scared. According to Bellamy, Derrick drove the van and dropped defendant off at his residence. Bellamy's affidavit further indicated this was the first opportunity he had to correct his statement. In his affidavit, Derrick stated he drove the van back to Fairfield after taking defendant home. Derrick also asserted that he could not have provided this information at the time of defendant's trial because he was wanted in connection with this offense. Tolbert's affidavit averred that defendant did not go back to Fairfield. Tolbert also went on to aver that he would have testified to this at trial, but his attorney would not allow him to testify. Davies claimed defendant was at his residence with her when Derrick and some of their friends arrived and informed them about the shooting.

¶ 18    At the March 2009 hearing, the State informed the circuit court that defendant had filed not only a *pro se* postconviction petition, but also a *pro se* supplemental petition and a *pro se* motion to amend the *pro se* postconviction petition. The State then asked the court to strike these filings. Postconviction counsel requested that the court not to strike the documents, as she did not have copies. The court then stated since defendant was represented by counsel, the "supplemental motions will be denied" and instructed the State to tender copies of everything to

counsel. The matter was continued for postconviction counsel to review the matter and determine if any other pleadings should be filed.

¶ 19    In 2010, postconviction counsel filed a supplemental petition for postconviction relief alleging defendant's felony murder conviction should be vacated because mob action is not a forcible felony and the indictment charging defendant with mob action was rendered defective by its failure to set forth the essential mental state element of the offense. The supplemental petition also asked the court to consider defendant's motion to reconsider sentence and incorporated all the allegations contained in defendant's previous postconviction petitions and motions to reduce sentence. Attached in support were, *inter alia,* the affidavits of Bellamy, Tolbert, Derrick, and Davies.

¶ 20    The State then filed a motion to dismiss alleging, in pertinent part, that defendant had failed to obtain leave of court prior to filing a successive postconviction petition. The motion also argued all *pro se* filings made after the appointment of counsel "should be stricken." At a subsequent hearing, the court stated there had been numerous *pro se* motions filed by defendant and several issues raised in those filings were adopted by postconviction counsel and incorporated into her filings. Ultimately, the circuit court granted the State's motion to dismiss, stating that in "regards to the successive petition, whether or not this is a successive petition," the issues raised in the instant proceeding were not new and had not survived the cause-and-prejudice test. Defendant appealed.

¶ 21    On appeal, defendant asserted that the circuit court erred when it characterized his postconviction petition as successive because his resentencing constituted a separate "conviction" for purposes of the Act, and, consequently, the instant petition represents the first opportunity for him to raise his claims in a postconviction proceeding following resentencing.

Defendant further maintained that because the petition was not a successive petition, the circuit court erred in granting the State's motion to dismiss based upon the petition's failure to meet the requirements of the cause-and-prejudice test.

¶ 22    We concluded that defendant's petition could not be a successive challenge to his first conviction because that conviction no longer existed. This was due to the fact that the petition was defendant's first challenge to his new conviction (the conviction entered when he was resentenced), accordingly, the petition should not have been subjected to the cause-and-prejudice test required of a successive postconviction petition. We, however, reviewed the merits of defendant's contentions because a *de novo* standard of review applied. *People v. Lash*, 2013 IL App (1st) 110506-U, ¶ 23 (unpublished order under Illinois Supreme Court Rule 23 (eff. July 1, 2011).

¶ 23    Pertinent to this appeal, we determined that the claims raised in defendant's *pro se* supplemental petition were properly raised on appeal. Specifically, in regard to the defendant's claim of actual innocence we concluded that the affidavits of Derrick, Bellamy, and Tolbert were not cumulative of the evidence presented at trial because they indicate, rather than being present at the scene of the shooting, the defendant was at his residence. Additionally, we observed that these affidavits constituted new evidence in that neither Derrick nor Tolbert were available to testify at trial due to the fact that Derrick was wanted in connection with the shooting and because Tolbert's attorney would not allow him to testify at the joint bench trial. Therefore, taken as whole, the facts contained in the affidavits are of such a conclusive character they could alter the result if the defendant were retried. *Id.* ¶ 35.

¶ 24    Upon reaching this conclusion, we acknowledged that it "is for the trial court, at a third-stage evidentiary hearing, to resolve evidentiary conflicts, weigh credibility, and determine the

weight to be given testimony and evidence. [Citation.] Accordingly, we remand this cause for a third-stage evidentiary hearing on the issue of actual innocence." *Id.* ¶ 36.

¶ 25                                   Third-Stage Evidentiary Hearing

¶ 26    On remand the circuit court conducted a third-stage evidentiary hearing. The following witnesses testified: Derrick, Bellamy, defendant, Irvin Frazin, defendant's trial counsel, and Kirby, the prosecutor who took Bellamy's statement. Joann Davies, although subpoenaed, was unable to be located and therefore did not testify at the evidentiary hearing. Additionally, defendant chose not to present Tolbert's testimony.

¶ 27    Derrick testified that on June 21, 1996, while he was engaged in a confrontation at 63rd and Fairfield the defendant sustained an injury to his eye. He, defendant, Bellamy, and Tolbert thereafter went to the defendant's residence in the van. Derrick could not recall how the defendant sustained the injury, who drove the van home, if anyone else was in the van, if the defendant stayed at home, or if the defendant was present when the victim was shot. According to Derrick, he could not remember any details regarding the incident as it occurred 20 years ago and he has actively tried to block it from his memory. On cross-examination, Derrick reiterated his inability to recall any details regarding June 21, 1996, and could not testify to any specific statements he made in his 2002 affidavit in support of the defendant's postconviction petition.

¶ 28    Bellamy testified as follows. On June 21, 1996, he, defendant, Derrick, Tolbert, Joseph Taylor, Donte Redding, and an unidentified individual known as "Scooby," were involved in an altercation where the defendant was struck in the eye. As the defendant's eye was "swolled up," Bellamy, Derrick, and Tolbert dropped the defendant off at his house. Bellamy believed that Davies might have been at the house when they arrived at 7 p.m. Bellamy then left to look for Richard Baines. When Bellamy returned to the defendant's residence with Baines, everyone

except for the defendant returned to the van. According to Bellamy, the defendant did not accompany them because he was "hurting" and could not see out of his eye.

¶ 29 On cross-examination, Bellamy was questioned regarding his signed, handwritten statement taken by Kirby shortly after the murder occurred. Bellamy testified, however, that there were "a lot of inaccuracies in that statement." According to Bellamy, Kirby did not read aloud certain portions of his statement and he was not "looking over [Kirby's] shoulder" while the statement was being read back. Bellamy further testified that he signed every page of the statement but what Kirby read aloud to him was not what was contained in the written statement. Bellamy acknowledged that the statement did not include any reference to the fact that the defendant was dropped off at his house before the others returned to 64th and Fairfield.

¶ 30 Bellamy also testified that due to Einstein's Theory of Relativity, his memory became better over time, depending, of course, on whether it was "something favorable or pleasurable." Bellamy denied that his memory was better three days after the murder than years later. Bellamy explained that the reason the detail about the defendant not being present was left out of his written statement was because he had been sleep deprived.

¶ 31 Bellamy was further cross-examined with his March 1999 affidavit. Bellamy admitted that the affidavit failed to mention that the defendant was dropped off and did not return to 64th and Fairfield with his friends.

¶ 32 Defendant testified that on June 21, 1996, he was involved in a fight on a basketball court at 63rd and Fairfield. Derrick, Tolbert, Bellamy, Taylor, and Redding were present. Suddenly, the defendant was "sucker punched" in the eye by Taylor. Defendant and his friends left in the van driven by Derrick. According to the defendant, his eye was swollen and he could not see out of it. They drove back to the defendant's residence. Davies, defendant's girlfriend, was present

when they arrived.  Defendant instructed her to obtain some ice for his eye.  Defendant remained at his residence and his friends left.

¶ 33    Defendant further testified that, at the time of the trial, he requested Davies testify on his behalf because she was present when he returned to his residence.  Defendant also discussed Davies with Frazin, his trial counsel, who was "supposed to have spoke [*sic*] with her," but the defendant did not know what came of the conversation.  According to defendant, Frazin did not assert an alibi defense at the trial.

¶ 34    Defendant rested and the State moved for a directed finding, which the circuit court denied.  The State then presented the testimony of two witnesses, Frazin and Kirby.

¶ 35    Frazin testified he was defendant's counsel in the underlying murder bench trial.  Frazin proceeded with the defenses of reasonable doubt and self-defense because defendant had informed him he was present when the shooting occurred but was not directly involved.  According to Frazin, subsequent to the previous conversation and prior to trial, the defendant told him that he wanted to assert an alibi defense, namely that he was not at the scene because he was at home with his girlfriend, Davies.  Frazin then testified that he spoke with Davies several times thereafter and that he informed Davies that he would not put her on the witness stand and let her commit perjury nor would he support perjury.

¶ 36    On cross-examination, Frazin testified that he no longer had defendant's case file and went over the facts of the case with the State's attorney prior to testifying in this matter.  Frazin further testified that "[j]ust before the trial, [defendant] mentioned to me that he was going to say that he was with his girlfriend."

¶ 37    Kirby testified he was an assistant State's attorney on June 21, 1996, and took Bellamy's written statement.  Kirby explained that after interviewing Bellamy, he personally wrote

Bellamy's statement by hand. He then sat next to Bellamy and reread the statement with Bellamy correcting portions as they reviewed it. According to Kirby, Bellamy informed him that defendant was present at the shooting and that defendant drove the van after the shooting occurred. On cross-examination, Kirby testified that his recollection of the case was based on the written statement. Kirby also testified that he did not recall that Bellamy appeared sleepy when he was being interviewed.

¶ 38 After hearing closing arguments, the circuit court issued an oral ruling on December 15, 2016, denying the petition, with a written ruling to follow, and entered and continued the matter. The written order was issued on March 2, 2017, and addressed the petitioner's claim of actual innocence based on newly discovered evidence. The circuit court acknowledged that the defendant submitted affidavits from Bellamy, Tolbert, Derrick, and Davies in support of his actual innocence claim and summarized the contents of those affidavits. The circuit court then set forth the testimony presented at the evidentiary hearing noting "Parise Tolbert and Joann Davies did not testify before this Court and their statements will not be considered for the purposes of this order." The circuit court found that the defendant's witnesses "did not testify credibly or were unable to substantiate his claim." The court indicated it "took little stock in petitioner's own, self-serving testimony. Petitioner lacked credibility and his actual innocence claim was rebutted by the testimony of attorney Frazin, who stated that petitioner had admitted that he was present at the shooting [and then sought to] pursue an alibi defense." The court further observed that the defendant "consistently failed to raise any claims related to this alleged alibi defense" in that he failed to assert them on direct appeal or raise a related ineffective assistance of trial counsel claim.

¶ 39 Regarding the defendant's witnesses, the circuit court found that Derrick's testimony was

"irrelevant" where he had "effectively suppressed any memory of what had occurred" and was "unable to provide any pertinent details concerning the events that transpired on June 21, 1996." The circuit court further stated, "Most importantly, Derrick testified on cross-examination that he could not recall if petitioner was present when the shooting occurred."

¶ 40    The circuit court further found that Bellamy's testimony failed to support the defendant's claim and that Bellamy lacked credibility. Specifically, the circuit court noted it "had an opportunity to observe Bellamy's demeanor and hear some of his outlandish and scientifically incorrect statements concerning his memory." The court further found that Bellamy lacked credibility due to "the radical changes he made to his original handwritten, signed statement inculpating petitioner." The circuit court found that Bellamy's testimony that his written statement was inaccurate was rebutted by Kirby who provided "credible, unimpeached testimony that he gave Bellamy his *Miranda* rights, that Bellamy gave a statement inculpating petitioner days after the shooting, that the statement was memorialized, that he reviewed every page of the statement with Bellamy, and that Bellamy signed each page of the statement after verifying its accuracy." Accordingly, the circuit court found that Bellamy's statement was an accurate recitation of events.

¶ 41    Lastly, the circuit court found the State presented "the highly credible, and once again unimpeached, testimony of attorney Irwin Frazin." The court indicated that Frazin testified regarding his ethical duties and the obligation he had to represent the petitioner to the best of his abilities. Frazin further explained that he did not seek an alibi defense because the petitioner had represented that he was present when Poole was shot, only to change his account later. The court also observed that Frazin interviewed Joann Davies about the defendant's alibi and determined that having her testify would be a violation of his ethical responsibilities because she would

likely commit perjury. The court determined that, "As a result, attorney Frazin chose to present the best possible defenses available to him, self-defense and reasonable doubt, which would have been at odds with an alibi defense."

¶ 42    The circuit court concluded that, based on "the aforementioned testimony, along with the evidence that was presented at petitioner's original trial, petitioner has failed to meet the evidentiary burden necessary for a cognizable claim of actual innocence." This appeal followed.

¶ 43                                     ANALYSIS

¶ 44                                     Standing

¶ 45    On appeal, the defendant maintains that we should reverse the denial of his postconviction petition and remand for a new evidentiary hearing because the circuit court exceeded the scope of our mandate. Prior to addressing this claim, however, we will address an issue that neither party has raised, that of the defendant's standing. The record reveals that, at the time of the evidentiary hearing in March 2016, it was represented that the defendant had two months left to serve on his sentence followed by a three-year term of mandatory supervised release. We requested the parties clarify the record in this regard. According to his counsel on appeal, the defendant was discharged from the custody of the Illinois Department of Corrections on May 13, 2016, and completed his term of mandatory supervised release on February 20, 2019.

¶ 46    The Act provides that "[a]ny person imprisoned in the penitentiary may institute a [postconviction] proceeding." 725 ILCS 5/122-1(a) (West 2016). In *People v. Henderson*, 2011 IL App (1st) 090923, ¶¶ 10-15, this court examined that section of the Act and determined that, when a defendant timely files a postconviction petition yet completes his or her term of mandatory supervised release before the petition's adjudication, the defendant loses standing under the Act.

¶ 47     Since *Henderson* was decided there have been numerous courts which have disagreed with this holding.  See *People v. McDonald*, 2018 IL App (3d) 150507, ¶ 23 (holding that "a defendant who timely files his postconviction petition while in custody is eligible for relief under the Act, regardless of whether he is released from custody in the intervening time"); *People v. Jones*, 2012 IL App (1st) 093180, ¶ 10 (holding that the Act only requires the defendant to "be serving any sentence imposed, including any period of mandatory supervised release, at the time of the initial timely filing of his petition"); see also *People v. Carrera*, 239 Ill. 2d 241, 246 (2010) (finding that " 'imprisoned in the penitentiary' has been held to include defendants who have been released from incarceration after timely filing their petition") (citing *People v. Davis*, 39 Ill. 2d 325 (1968)).  Most recently, in *People v. Coe*, 2018 IL App (4th) 170359, ¶¶ 20-45, this court examined *Carrera*, *Davis*, *McDonald*, *Jones*, and *Henderson*, and found that what matters for purposes of standing under the Act is the timeliness of filing the postconviction petition, not what occurs subsequent to the filing.  As such, the *Coe* court agreed with *McDonald* and *Jones* and did not follow *Henderson*.  *Id.* ¶ 50.  We agree with *Coe*, *McDonald*, and *Jones*, and find that defendant still has standing under the Act even though he completed his term of mandatory supervised release as he filed his postconviction petition while in custody.  We now turn to consider the defendant's claim.

¶ 48                                          Standard of Review

¶ 49     The Act (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a three-stage proceeding in which a petitioner may challenge his conviction or sentence based on a substantial violation of his constitutional rights.  *People v. Allen*, 2015 IL 113135, ¶ 21.  At the first stage, the circuit court must independently assess the petitioner's petition and determine if it is "frivolous" or "patently without merit."  725 ILCS 5/122-2.1(a)(2) (West 2016); *People v. Edwards*, 197 Ill. 2d

239, 244 (2001). To advance to the second stage, "a petition need only present the gist of a constitutional claim." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the second stage, the court may appoint counsel to represent an indigent petitioner (725 ILCS 5/122-4 (West 2016)), and the State can move to dismiss the petition (*id.* § 122-2.1(b)).

¶ 50    If the petitioner makes a substantial showing of a constitutional violation, the petition advances to a third-stage evidentiary hearing. *Id.* § 122-6. At this stage the petitioner must demonstrate, by a preponderance of the evidence, a substantial violation of a constitutional right. *People v. Coleman*, 2013 IL 113307, ¶ 92. The circuit court has wide discretion in deciding what evidence to consider (*People v. Williams*, 2017 IL App (1st) 152021, ¶ 22) and acts as the finder of fact at the evidentiary hearing, resolving any conflicts in the evidence and determining the credibility of witnesses and the weight to be given particular testimony (*People v. Domagala*, 2013 IL 113688, ¶ 34). *Pendleton*, 223 Ill. 2d at 473. We will not reverse the circuit court's ruling unless it is manifestly erroneous. *People v. Morgan*, 212 Ill. 2d 148, 155 (2004). That is only if it contains error that is clearly evident, plain, and indisputable. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009).

¶ 51                               Actual Innocence

¶ 52    In this instance, defendant's petition alleged a claim of actual innocence. "The United States Supreme Court has emphasized that claims of actual innocence must be supported 'with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.' " *People v. Jones*, 2017 IL App (1st) 123371, ¶ 44 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). A freestanding claim of actual innocence is cognizable under the Act because a wrongful conviction of an innocent person violates due process under the Illinois Constitution. *People v. Washington*, 171

- 15 -

Ill. 2d 475, 489 (1996). A defendant can raise a freestanding claim of actual innocence based on newly discovered evidence in a postconviction proceeding. *Ortiz*, 235 Ill. 2d at 333.

¶ 53   Our supreme court has held that evidence of actual innocence must be: (1) newly discovered; (2) not discoverable earlier through the exercise of due diligence; (3) material and not merely cumulative; and (4) of such conclusive character that it would probably change the result on retrial. *People v. Sanders*, 2016 IL 118123, ¶ 24 (citing *People v. Edwards*, 2012 IL 111711, ¶ 32). New means the evidence was discovered after trial and could not have been discovered earlier through the exercise of due diligence. *Coleman*, 2013 IL 113307, ¶ 96. Material means the evidence is relevant and probative of the petitioner's innocence. *People v. Smith*, 177 Ill. 2d 53, 82-83 (1997). Noncumulative means the evidence adds to what the jury heard. *People v. Mosltad*, 101 Ill. 2d 128, 135 (1984). Conclusive means the evidence, when considered along with the trial evidence, would probably lead to a different result. *Ortiz*, 235 Ill. 2d at 336-37.

¶ 54   In practice, the circuit court typically will review the evidence presented at the evidentiary hearing to determine first whether it was new, material, and noncumulative. If any of it was, the circuit court then must consider whether that evidence places the evidence presented at trial in a different light and undercuts the court's confidence in the factual correctness of the guilty verdict. This is a comprehensive approach and involves credibility determinations that are uniquely appropriate for trial judges to make. Probability, not certainty, is the key since the trial court in effect predicts what another jury would likely do, considering all the evidence, both new and old, together. *Coleman*, 2013 IL 113307, ¶ 97.

¶ 55   On appeal, defendant argues that the circuit court did not comply with this court's mandate on remand where it allowed the State to present privileged and prejudicial evidence

unrelated to defendant's actual innocence claim. Specifically, the defendant takes issue with the fact the circuit court allowed Frazin to testify regarding his decision not to present the alibi testimony of Davies and that, in so testifying, Frazin revealed privileged communications with the defendant. Due to the highly prejudicial nature of Frazin's testimony, defendant requests this court reverse the judgment of the circuit court and remand the matter for a new evidentiary hearing.

¶ 56    In response, the State maintains that the circuit court complied with the mandate and asserts that Frazin's uncontested testimony was wholly relevant because it directly addressed defendant's claim of actual innocence and refuted defendant's own testimony regarding why an alibi was never asserted at trial. The State further argues that the defendant waived attorney-client privilege where it was the defendant who placed Frazin's communications with him at issue.

¶ 57                              Scope of the Mandate

¶ 58    We initially observe that the defendant does not contest the credibility or fact-finding determinations of the circuit court. Nor does the defendant argue that the evidence adduced of his actual innocence is of such a conclusive character that it would probably change the result on retrial. Rather, the defendant challenges the procedure and parameters of the evidentiary hearing itself. Defendant asserts that the circuit court considered improper evidence that was outside the scope of the evidentiary hearing, namely, that the circuit court permitted the State to present the testimony of Frazin. According to the defendant, the circuit court lacked the authority to broaden the mandate to consider Frazin's representation of defendant at the initial trial.

¶ 59    We first clarify the scope of our mandate. On remand, a circuit court lacks the authority to act beyond the scope of the mandate. *People v. Gonzalez*, 407 Ill. App. 3d 1026, 1037 (2011).

If the mandate directs the court to proceed in conformity with the opinion, the entire opinion must be consulted in determining the appropriate course of action. *Id.* If the mandate is general, the court should examine the opinion and determine what further proceedings would be consistent with the opinion. *Id.* It is axiomatic that a reviewing court that issued a mandate has the power to enforce the mandate and determine whether there has been compliance. *Id.* The question of whether a circuit court complied with a reviewing court's mandate is a question of law subject to *de novo* review. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351-52 (2002).[1]

¶ 60    In this case, our mandate provided broadly that, "we remand this cause for a third-stage evidentiary hearing on the issue of actual innocence." *Lash*, 2013 IL App (1st) 110506-U, ¶ 36. Regarding the scope of the evidentiary hearing, section 122-6 of the Act provides that, "The court may receive proof by affidavits, depositions, oral testimony, or other evidence. In its discretion the court may order the petitioner brought before the court for the hearing." 725 ILCS 5/122-6 (West 2016). As previously observed, at a third-stage evidentiary hearing the circuit court has wide discretion in deciding what evidence to consider. *Williams*, 2017 IL App (1st) 152021, ¶ 22; *People v. Sanders*, 2016 IL 118123, ¶ 45. The third-stage is also where the circuit court acts as the finder of fact, resolves any conflicts in the evidence, and determines the credibility of the witnesses and the weight to be given the particular testimony. *Domagala*, 2013 IL 113688, ¶ 34. Accordingly, any evidence or testimony relevant to the issue of defendant's actual innocence may be presented at the evidentiary hearing.

¶ 61    Here, defendant asserts Frazin's testimony regarding defendant's alibi defense was irrelevant because defendant did not raise a claim of ineffective assistance of trial counsel.

---

[1] Defendant acknowledges that he did not raise this issue before the trial court. However, due to our *de novo* standard of review and in the interests of justice, we will consider defendant's argument.

Citing the Illinois Rules of Evidence, defendant explains that Frazin's testimony "bore no relevance to the newly discovered evidence of Lash's actual innocence."

¶ 62     While the Illinois Rules of Evidence are not applicable in postconviction hearings (Ill. R. Evid. 1101(b)(3) (eff. Sept. 17, 2019)), an essential part of the inquiry into whether a defendant can sufficiently establish that they are innocent involves whether the evidence presented is "material." *People v. Smith*, 177 Ill. 2d 53, 82 (1997).  Material evidence is that evidence which is relevant and probative of the defendant's innocence.  *Coleman*, 2013 IL 113307, ¶ 96.  The definition of "relevant" is well-established in our jurisprudence and just so happens to be codified in our Rules of Evidence.  See *People v. Monroe*, 66 Ill. 2d 317, 321-22 (1977). "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' "  *People v. Tatum*, 2019 IL App (1st) 162403, ¶ 111 (quoting Ill. R. Evid. 401 (eff. Jan. 1, 2011)).  Just as well-established is the premise that even relevant evidence may be excluded from consideration where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Ill. R. Evid. 403 (eff. Jan. 1, 2011); see *People v. Dabbs*, 239 Ill. 2d 277, 290 (2010) ("while this codified version of the rules is of recent origin, the need to balance probative value and the risk of unfair prejudice has long been a part of our common law.").  Accordingly, while we acknowledge that the Illinois Rules of Evidence are not applicable to postconviction hearings, the definition of relevance is a basic tenet of our jurisprudence and an essential part in a court's determination on a defendant's actual innocence claim.  See *People ex rel. Noren v. Dempsey*, 10 Ill. 2d 288, 293 (1957) ("The basic principle that animates our law of evidence is that what is relevant is

admissible."). Therefore, we will apply the foregoing principles of relevance here in response to defendant's argument.

¶ 63    While it is certainly true that the question of whether Frazin was ineffective was not at issue during the evidentiary hearing, Frazin's testimony was relevant to rebut defendant's testimony that he had informed Frazin about Davies being present at his residence during the shooting. In his case-in-chief, the defendant testified that he had informed Frazin about Davies being a potential alibi witness, but that he did not know whether Frazin had ever spoken with her. Thus, the defendant was the one who opened the door to allow Frazin to testify on cross-examination as to what was relayed to him regarding a potential alibi witness and why he did not proceed with that defense. Moreover, it was the defendant who sought the admission of Davies' affidavit into evidence. Therefore, any evidence related to the veracity of that affidavit was also relevant to the evidentiary hearing. We, therefore, do not view Frazin's testimony as being outside the broad scope of the mandate of this court to conduct an evidentiary hearing under the Act. See 725 ILCS 5/122-6 (West 2016).

¶ 64    We further observe that this court did not definitively determine whether Davies' affidavit constituted newly discovered evidence in *Lash*, 2013 IL App (1st) 110506-U. When considering whether a postconviction petition can pass second-stage muster, the court considers, taking all the evidence appended as true, whether the petition presents a substantial showing of a constitutional violation. *Gaultney*, 174 Ill. 2d at 418. It is during third-stage proceedings where the circuit court is charged with considering all the relevant evidence and making the ultimate determination as to whether the petitioner demonstrated, by a preponderance of that evidence, that a substantial violation of a constitutional right occurred. *Coleman*, 2013 IL 113307, ¶¶ 81, 92. As we did not render a determination regarding the Davies affidavit, on remand it was

within the circuit court's purview to accept evidence related to the affidavit and make that determination on its own accord.

¶ 65    Defendant, however, asserts that portions of Frazin's testimony were so prejudicial as to outweigh its probative value.  Specifically, defendant contends (1) the circuit court heavily relied on Frazin's improper testimony to deny the petition and (2) Frazin improperly revealed privileged information.

¶ 66    We disagree with defendant's assessment that the circuit court relied primarily on Frazin's testimony when denying the postconviction petition.  The circuit court's written order clearly provided a detailed discussion of the credibility of all the witnesses at the evidentiary hearing.  Importantly, the circuit court found that none of defendant's witnesses testified credibly and it "place[d] little stock in petitioner's own, self-serving testimony."  In so finding, the circuit court explained its reasoning as to why each of the defendant's witnesses were not credible and thus did not support his claim of actual innocence.  Accordingly, while Frazin's testimony played a role in the circuit court's denial of the petition, it was not the exclusive reason for the denial as the defendant suggests.

¶ 67    Defendant maintains, however, that the circuit court's consideration of Frazin's assessment of Davies' credibility was particularly damaging where the circuit court "explicitly refused to consider Davies' affidavit as evidence of actual innocence" and she did not personally testify at the evidentiary hearing.  We decline to adopt defendant's interpretation of the circuit court's order regarding Davies' affidavit.  In fact, the record reveals the circuit court expressly reviewed Davies' affidavit and set forth its contents in its written order.  Moreover, the circuit court stated multiple times during the evidentiary hearing that it would take Davies' affidavit into consideration when rendering its ruling.  It is our view, reading the order as a whole the circuit

court was merely emphasizing that Davies failed to testify at the evidentiary hearing therefore there was no hearing testimony for it to consider.

¶ 68                                    Attorney-Client Privilege

¶ 69    Defendant further argues that Frazin's testimony violated his attorney-client privilege where Frazin testified that before trial defendant told him he was at the scene of the shooting but did not commit the shooting.  Defendant maintains that he did not expressly waive his attorney-client privilege in this case and thus this testimony was highly prejudicial.

¶ 70    In response, the State asserts that defendant did in fact waive attorney-client privilege where defendant testified in his case-in-chief that he revealed the alibi defense to Frazin and that defendant did not know why Frazin did not proceed with that defense.

¶ 71    As recognized by our supreme court:

>        "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.  8 John H. Wigmore, Evidence § 2290, at 542 (McNaughton rev. ed. 1961).  The purpose of the privilege, which belongs to the client ([Citation]), is to encourage and promote full and frank communication between the client and his or her attorney, without the fear that confidential information will be disseminated to others. [Citations.]  The privilege embodies the principle that sound legal advice and advocacy are dependent upon such full and frank communication. [Citation.]" *People v. Radojcic*, 2013 IL 114197, ¶ 39.

¶ 72                                         *Waiver*

¶ 73    Among the exceptions to the attorney-client privilege is the concept of "waiver."  Only the client may waive the privilege.  *Id.*  "Any disclosure by the client is inherently inconsistent with the policy behind the privilege of facilitating a confidential attorney-client relationship and,

therefore, must result in a waiver of the privilege." *Profit Management Development, Inc., v. Jacobson, Brandvik & Anderson, Ltd.*, 309 Ill. App. 3d 289, 299 (1999). As explained by our supreme court, "The basic, well-settled rule is that when a client discloses to a third-party a privileged communication, that particular communication is no longer privileged and is discoverable or admissible in litigation." *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 35 (citing Michael H. Graham, Evidence: An Introductory Problem Approach 563 (2002) ("The holder of the privilege against disclosure of the confidential matter or communication waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication ***.")).

¶ 74                               Subject Matter Waiver

¶ 75     Directly applicable to the case at bar on the issue of waiver is what is known as "subject matter waiver." *Id.* ¶ 37. Our supreme court has explained that subject matter waiver occurs where " '[t]he client's offer of his own or the attorney's testimony as to a *specific communication* to the attorney is a waiver as to all other communications to the attorney on the same matter.' " (Emphasis in original.) *Id.* (quoting 8 John Henry Wigmore, Evidence § 2327, at 638 (McNaughton rev. ed. 1961)). Moreover, "a client's offer of his own or his 'attorney's testimony as to a *part of any communication* to the attorney is a waiver as to the whole of that communication, on the analogy of the principle of completeness.' " (Emphasis in original.) *Id.* (quoting 8 John Henry Wigmore, Evidence § 2327, at 638 (McNaughton rev. ed. 1961)).

¶ 76     The concept of subject matter waiver has been applied in the criminal context. See *People v. O'Banner*, 215 Ill. App. 3d 778, 793 (1991); *People v. O'Connor*, 37 Ill. App. 3d 310, 314 (1976). As explained in *In re Grand Jury January 246*, 272 Ill. App. 3d 991, 997 (1995):

"Although voluntary disclosure of confidential information does not effectively waive an

attorney-client privilege as to all other non-disclosed communications that may have

taken place [citation], where a client reveals portions of her conversation with her

attorney, those revelations amount to a waiver of the attorney-client privilege as to the

remainder of the conversation or communication about the same subject matter."

¶ 77    Subject matter waiver is indeed very similar to the common law "completeness doctrine," which provides that "if one party introduces part of an utterance or writing the opposing party may introduce the remainder or so much thereof as is required to place that part originally offered in proper context so that a correct and true meaning is conveyed."  (Internal quotation marks omitted.)  *People v. Craigen*, 2013 IL App (2d) 111300, ¶ 42.  The completeness doctrine has been utilized by our courts to permit an opposing party to question a witness on cross-examination about the remainder of a writing or oral statement.  *Id.*  The completeness doctrine is typically limited to "what was said on the same subject at the same time."  (Internal quotation marks omitted.)  *Id.* ¶ 43 (quoting *People v. Brown*, 249 Ill. App. 3d 986, 990 (1993)).

¶ 78    With these principles in mind, we turn to consider whether the defendant waived his attorney-client privilege.  Defendant's postconviction petition alleged a claim of actual innocence in that, due to an eye injury, he was with Davies when the shooting occurred. Defendant's petition was supported by the affidavit of Davies who averred that on June 21, 1996, defendant had suffered an eye injury and he remained with her while Derrick and others left. Davies further averred that upon their return, she was informed that a shooting had occurred. Davies did not testify at the evidentiary hearing, but her affidavit was admitted into evidence. Defendant then testified at the evidentiary hearing that, prior to his initial trial, he informed Frazin that Davies could provide an alibi.  Defendant, however, testified he was unaware if

Frazin acted on that information.

¶ 79     In rebuttal, Frazin testified he did not pursue the alibi defense because, "I think sometime before trial, Eric Lash mentioned to me that he was going to use an alibi defense even though I know that he had told me that he was at the scene, but didn't do any shooting. And I talked to his girlfriend." According to Frazin, he talked to Davies "[s]everal times" and based on those conversations, "I probably told her that that's not what Eric said and besides that, I'm not going to put you on the witness stand and let you perjure yourself nor am I going to support perjury."

¶ 80     We find that the subject matter waiver doctrine applies in this case where defendant disclosed his conversation with Frazin regarding the alibi defense at the evidentiary hearing. Accordingly, no error was committed when the circuit court allowed Frazin's testimony. Such testimony was directly related to the alibi defense and responsive to defendant's testimony. See *O'Connor*, 37 Ill. App. 3d at 314-15.

¶ 81     Having found no error was committed by the circuit court, we decline to address defendant's final argument that postconviction counsel was ineffective for failing to object to Frazin's testimony. *People v. Rinehart*, 2012 IL 111719, ¶ 22 ("because there was no error, the defendant's ineffective assistance of counsel contention must fail").

¶ 82     In sum, we find the circuit court properly followed the mandate of this court. As defendant has not challenged the circuit court's findings, we further conclude that the judgment of the circuit court of Cook County denying defendant's petition is affirmed.

¶ 83                                    CONCLUSION

¶ 84     For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

¶ 85     Affirmed.